### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **BRANDON J. CLAWSON,** | : |
|        Debtor. | : **Bankruptcy No. 05-28961-MBM** |
| | : |
| **Brandon J. Clawson,** | : |
|        Movant, | : **Chapter 7** |
| | : |
| v. | : |
| | : **Doc. Nos. 15 & 20** |
| **Cassady Pierce Company,** | : |
|        Respondent. | : |

Appearances:    Douglas S. Sepic, for Brandon Clawson.
David Abrams, for Cassady Pierce Company.

### **MEMORANDUM OPINION**

Brandon Clawson, the instant debtor (hereafter "the Debtor"), moves both to reopen his bankruptcy case and to then avoid a judicial lien of Cassady Pierce Company (hereafter "Cassady"), which lien the Debtor neglected to avoid before his case was initially closed. For the reasons set forth below, the Court denies both motions with prejudice.

### **STATEMENT OF FACTS**

The Debtor filed for bankruptcy under Chapter 7 on July 11, 2005. His wife did not join in his voluntary Chapter 7 bankruptcy petition. The Debtor received his bankruptcy discharge and his bankruptcy case was closed on March 3, 2006.

On May 24, 2005, Cassady obtained a judgment against the Debtor solely in the amount of $7,147.83. Prior to May 24, 2005, the Debtor and his wife acquired an interest in real property located at 603 Overhead Bridge Road,

Youngwood, PA (hereafter "the Realty"). The Debtor and his wife owned the Realty as tenants by the entirety prior to May 24, 2005, as well as up to July 11, 2005, which is when the Debtor filed for bankruptcy. The Debtor and his wife have at all times utilized the Realty as their residence.

The Debtor elected to take the federal exemptions while in bankruptcy, that is those exemptions provided for in 11 U.S.C. § 522(d). The Debtor now takes the position that among such exemptions that he so took was an exemption in the Realty, notwithstanding that the Court's examination of the Debtor's Bankruptcy Schedule C reveals no such exemption. The Court will overlook such apparent oversight by the Debtor, however, given that, as the Debtor's Bankruptcy Schedule A reveals and as the parties also appear to agree, the Realty was fully encumbered by two consensual security interests as of July 11, 2005, that is the Debtor had absolutely no equity in the Realty as of such date; consequently, the Debtor, if he had filled out his Schedule C so as to reflect an exemption in the Realty, would have taken an exemption in the Realty for a value of $0.00.

As mentioned above, the Debtor, prior to March 3, 2006 (i.e., the date when his bankruptcy case closed), failed to avoid the May 24, 2005 judgment of Cassady as a judicial lien impairing his exemption in the Realty. If such judgment constituted a judicial lien upon any interest that the Debtor possessed in the Realty as of July 11, 2005, then the Debtor could have avoided the entirety of such judgment pursuant to 11 U.S.C. § 522(f)(1)(A) given that, as set forth above, the Debtor did not possess any equity in the Realty as of July 11, 2005.

The Debtor represents that, at some point apparently subsequent to March 3, 2006, he and his wife attempted to refinance one of the loans that is presently secured by the Realty. The Debtor represents that such refinancing effort was unsuccessful because, according to the Debtor, the refinancing lender took the position that Cassady's May 24, 2005 judgment constituted an inchoate lien against the Debtor's entireties interest in the Realty. Such position by such lender, if correct, would, of course, mean that such lien in favor of Cassady could potentially have impaired any mortgage that such lender would have obtained from the Debtor via the refinancing process.

On April 28, 2006, in an effort to extinguish any inchoate lien that Cassady might have had in the Realty at such time, the Debtor and his wife engaged in a conveyance whereby they conveyed the Realty to the Debtor's wife individually. Notwithstanding such conveyance, the refinancing lender to which the Court just referred still refused to refinance the mortgage loan on the Realty. Such lender still refused to so refinance because, according to the Debtor, such lender still felt that an inchoate lien via Cassady's judgment remained as against the Debtor's entireties interest in the Realty notwithstanding the April 28, 2006 conveyance; according to the Debtor, the refinancing lender took such position on the ground that such conveyance was not to a bonafide purchaser for value.

Having apparently been so rebuffed in his attempt to divest himself of any potential lien that Cassady might have against the Realty, the Debtor brings the instant motions to reopen his bankruptcy case and to then avoid any such lien in favor of Cassady against the Realty. The Debtor filed the motion to reopen on

July 21, 2006, and the motion to avoid lien on July 26, 2006.

The Court holds, as set forth below, that the April 28, 2006 conveyance of the Realty from the Debtor and his wife to the Debtor's wife individually operated to extinguish any inchoate lien that Cassady might have had against the Realty – or, more accurately, against the Debtor's entireties interest in the Realty – as of such date. Because the Court so rules, such lien in favor of Cassady necessarily did not exist as of July 2006 when the Debtor brought the instant motions. Absent such lien, the Court cannot possibly grant the relief that the Debtor seeks in his lien avoidance motion, thereby (a) rendering moot both such motion and the motion to reopen, and (b) compelling the Court's decision to deny both such motions with prejudice.

## **DISCUSSION**

Although Pennsylvania law still appears to be somewhat unsettled as to whether a judgment creditor obtains, solely by virtue – and at the time – of judgment, a lien in the right of survivorship that accompanies such creditor's judgment debtor's interest in entireties property that he or she owns (hereafter referred to as such debtor's entireties interest in such property), see In re Hope, 77 B.R. 470, 475 & n.1 & 5 (Bankr.E.D.Pa. 1987) (Pennsylvania law is not entirely clear whether judgment creditor obtains lien immediately upon judgment or, rather, if such lien is only obtained if, and when, judgment debtor's entireties cotenant (i.e., spouse) predeceases such debtor), the Court will accept, for purposes of the instant matter, that Cassady, by virtue of its May 24, 2005 judgment, then obtained a judicial lien in the Debtor's entireties interest in the

4

Realty. As a consequence of the foregoing holding, Cassady possessed an inchoate judicial lien against the Realty as of July 11, 2005, which lien could have been, but was not, avoided while the Debtor's bankruptcy case was open.

Despite such lien in favor of Cassady, Cassady held such lien subject to its divestiture upon the death of either the Debtor or – more importantly for purposes of the instant matter – the alienation of the Realty by the joint act of the Debtor and his wife. *See* Hope, 77 B.R. at 473-74 (citing Beihl v. Martin, 84 A. 953, 956 (Pa. 1912); C.I.T. Corp. v. Flint, 5 A.2d 126, 129 (Pa. 1939); Murphey v. C.I.T. Corp., 33 A.2d 16, 18 (Pa. 1943)); Stop 35, Inc. v. Haines, 543 A.2d 1133, 1136 (Pa.Super.Ct. 1988); Klebach v. Mellon Bank, N.A., 565 A.2d 448, 450 (Pa.Super.Ct. 1989). Furthermore, such alienation by such joint act could take the form of a conveyance from the Debtor and his wife to the Debtor's wife individually, rather than to some independent third party. *See* Stop 35, 543 A.2d at 1136; Klebach, 565 A.2d at 450. Accordingly, the April 28, 2006 conveyance of the Realty from the Debtor and his wife to the Debtor's wife individually operated to extinguish the inchoate lien that Cassady had against the Realty – or, more accurately, against the Debtor's entireties interest in the Realty – as of such date.

So as to justify his present lien avoidance motion, the Debtor argues – somewhat perversely, it seems to the Court – that the aforesaid April 28, 2006 conveyance by him and his wife constitutes an avoidable fraudulent

5

conveyance.[1] If the Debtor is correct, then such conveyance, of course, did not effectively operate to extinguish Cassady's judicial lien as of April 28, 2006; such would be the case, of course, because post-avoidance such lien would once again exist. As well, if the Debtor is correct, then the Court could readily understand the reticence of the Debtor's prospective refinancing lender given that any mortgage that it might then have received via such refinancing, even if just from the Debtor's wife given that the Realty is now titled only in her name post-April 28, 2006, would have been subject to a claim by Cassady against the Realty; such is the case because the Debtor's wife did not obtain the Realty from the Debtor and herself as a bonafide purchaser for value given that she (a) paid but $1.00 for the conveyance, and (b) obviously had knowledge of the basis for any fraudulent transfer claim that Cassady might advance.

However, and unfortunately – or perhaps fortunately – for the Debtor, the April 28, 2006 conveyance of the Realty by him and his wife to his wife alone does not constitute an avoidable fraudulent conveyance. Such is the case (a) because, as a matter of law in Pennsylvania, the transfer of entireties property that "is not subject to process by a creditor holding a claim against only one [entireties] tenant," that is the transfer of entireties property that is encumbered by a judicial lien that is the result of a judgment against only one of the entireties spouses, cannot constitute a fraudulent conveyance, 12 Pa.C.S.A. § 5101(b) (Purdon's 2007) ("Transfer," for purposes of the Pennsylvania Uniform

---

[1] The perversity that the Court identifies is that the Debtor would even wish to voluntarily argue to the Court that he engaged in a fraudulent conveyance.

Fraudulent Transfer Act, means a "disposing of or parting with an asset;" "Asset," for such purposes, means "[p]roperty of a debtor[ but t]he term does not include" the above-described entireties property); *see also* Stauffer v. Stauffer, 351 A.2d 236, 239 & 245 (Pa. 1976) (conveyance of entireties property from husband and wife to wife alone does not constitute fraudulent conveyance); Mecklem v. Bailey, 74 Pa.D.&C. 567, 1951 WL 3513 (Pa.Com.Pl. 1950) (same); In re Blatstein, 192 F.3d 88, 96 (3rd Cir. 1999) (same, interpreting Pennsylvania law); In re Nam, 257 B.R. 749, 761-62 (Bankr.E.D.Pa. 2000) (same, interpreting Pennsylvania law), not even if such transfer is (i) from the two entireties tenants to just one of them, *see* Stauffer, 351 A.2d at 239 & 245; Mecklem, 74 Pa.D.&C. 567; Blatstein, 192 F.3d at 96; Nam, 257 B.R. at 761-62, or (ii) accompanied by actual fraudulent intent, *see* Stauffer, 351 A.2d at 245 ("There can be no doubt in the instant case that Mr. Stauffer intended to make a fraudulent conveyance," yet, it was held, he did not); Blatstein, 192 F.3d at 95-96 (actual fraudulent intent allegation found to be irrelevant given that entireties property was the subject of the alleged fraudulent transfer), and (b) given that Cassady's judicial lien arose as the result of a judgment against only the Debtor, not against the Debtor's wife as well.[2]

---

[2]The Debtor's reliance on the decision in Amadon v. Amadon, 59 A.2d 135 (Pa. 1948), to support his fraudulent conveyance position is misplaced because in Amadon, in significant contrast to the instant matter, the conveyance that was found to be fraudulent therein was a transfer from one spouse individually to the both of them as tenants by the entirety; such a conveyance can be fraudulent if done for no consideration because it has the effect of reducing the pool of assets that a creditor body can look to so as to satisfy claims. Such conveyance as was at issue in Amadon is distinguishable from a transfer by entireties cotenants (i.e., both spouses) to just one of them individually – as was the case with the April 28, 2006 conveyance of the Realty by the Debtor and his wife to his wife alone –

Therefore, the April 28, 2006 conveyance of the Realty from the Debtor and his wife to the Debtor's wife individually operated to extinguish Cassady's judicial lien as of April 28, 2006. As for the aforesaid reticence of the Debtor's prospective refinancing lender subsequent to the April 28, 2006 conveyance, such lender was either incorrect or, the Court surmises, overly cautious in concerning itself with Cassady, Cassady's judicial lien, and the fact that the Debtor's wife, during the April 28, 2006 transaction, was not a bonafide purchaser for value given that, as just set forth, Cassady does not, as a result of such transaction, possess a viable fraudulent conveyance – or, for that matter, any sort of – claim against the Debtor particular to the Realty.

Because, as the Court rules, Cassady's judicial lien did not exist as of July 26, 2006, when the Debtor moved to avoid the same, the Court cannot possibly grant the relief sought by the Debtor in such motion. *See* Hope, 77 B.R. at 471. Without the need to avoid a lien, the Debtor also lacks the need to reopen his bankruptcy case at this time. *See* Id. Therefore, each of the instant motions of the Debtor are rendered moot, which compels the Court's decision to deny each such motion with prejudice.

## **CONCLUSION**

In light of the foregoing analysis, the Court shall deny with prejudice both the Debtor's motion to reopen his bankruptcy case and the Debtor's motion to

---

because, in that situation, the property that is transferred could not have been executed upon by creditors to satisfy their claims; thus, subsequent to such conveyance, the pool of assets that a creditor body could look to so as to satisfy claims has not shrunken in any way.

avoid a judicial lien of Cassady.

An appropriate order will be entered.

**BY THE COURT**

 **/s/**
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

**DATED:     January 23, 2007**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : |
| **BRANDON J. CLAWSON,** | : |
| Debtor. | : **Bankruptcy No. 05-28961-MBM** |
| | : |
| **Brandon J. Clawson,** | : |
| Movant, | : **Chapter 7** |
| | : |
| v. | : |
| | : **Doc. Nos. 15 & 20** |
| **Cassady Pierce Company,** | : |
| Respondent. | : |

## ORDER OF COURT

**AND NOW,** this **23rd day** of **January, 2007**, upon consideration of the motions by Brandon Clawson, the instant debtor (hereafter "the Debtor"), to reopen his bankruptcy case and to then avoid a judicial lien of Cassady Pierce Company (hereafter "Cassady"); and for the reasons set forth in the accompanying Memorandum Opinion of the same date; and after notice and a hearing on the motions held on September 26, 2006; and subsequent to the submission by the parties of their briefs in support of their respective positions, it is **hereby ORDERED, ADJUDGED, AND DECREED** that the Debtor's motions to reopen his bankruptcy case and to avoid a judicial lien of Cassady are **DENIED WITH PREJUDICE**.

**BY THE COURT**

_/s/_
**M. BRUCE McCULLOUGH,**
**U.S. Bankruptcy Judge**

    cm:    Douglas S. Sepic, Esq.
Watson Mundorff Brooks & Sepic
720 Vanderbilt Rd.
Connellsville, PA 15425

David Abrams, Esq.
Abrams & Mazer
Alstan Mall, Suite 207
2526 Monroeville Boulevard
Monroeville, PA 15146

James R. Walsh, Trustee
Spence, Custer, Saylor, Wolfe & Rose
P. O. Box 280
Johnstown, PA 15907